**UNITED STATES ex rel. FINK v. REIMER, Com'r of Immigration.**

**No. 243.**

Circuit Court of Appeals, Second Circuit.
April 4, 1938.

Joshua S. Koenigsberg, of New York City, for appellant.

Lamar Hardy, U. S. Atty., of New York City (Jay Slonim, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order, dismissing a writ of habeas corpus to review the deportation of the relator, a Pole, who entered this country on May 22, 1927, and was arrested for deportation on September 30, 1935. The recital in the warrant of deportation was that the alien was "subject to deportation under section 19 of the Immigration Act of February 5, 1917 [8 U.S.C.A. § 155], being subject thereto under the following provisions of the laws of the United States to wit: The act of 1924 in that he is found to have been at the time of entry not entitled under said act to enter the United States for the reason to wit: that the immigration visa which he presented was not valid because procured by fraud or misrepresentation". Upon the deportation hearing it appeared that the alien had obtained a passport by pretending to be one, Markus Apfelroth, who was entitled to a "preference quota visa", and that by the same fraud he had obtained such a visa from an American consul in Poland. By the use of this passport so authenticated, he entered as Apfelroth and lived here until June 19, 1933, when he was naturalized as Apfelroth, but changed his name to Fink. The fraud was discovered in 1933; his citizenship was cancelled, and he was sentenced to a term of three months on September 22, 1935. The grounds for the writ were first, that the deportation warrant was issued under the act of 1917, as to which there was a three-year statute of limitation; second, that he was not deportable under the Quota Act of 1924, § 14, 8 U.S.C.A. § 214, because at entry he had an unexpired immigration visa; and third, that fraud and misrepresentation in obtaining a passport or visa are not grounds for deportation under any section of either act.

While the recitals in the warrant of deportation are cumbersome, confused and awkward, it is entirely plain that the warrant was issued under the act of 1924, and that the act of 1917 was mentioned only because section 14 of the act of 1924 incorporated the deportation procedure of section 19 of the act of 1917, 8 U.S.C.A. § 155. The language of section 14 is: "Any alien who at any time after entering the United States is found to have been at the time of entry not entitled under this Act [subchapter] to enter the United States, * * * shall be taken into custody and deported in the same manner as provided for in §§ 19 and 20 of the immigration act of 1917 [sections 155 and 156 of this title]." Section 19 does not, it is true, define the method of deportation, but only the classes to be deported, it is rather section 20 of the act of 1917, 8 U.S.C.A. § 156, that prescribes the procedure; but that makes no difference for the purposes of this warrant, because the intent was clear. The statute of limitations of section 19 of the act of 1917 did not therefore apply; section 14 of the act of 1924, did not incorporate it. Its own language is explicit that deportation upon such an unlawful entry is never barred; that may at times prove a harsh rule, but the proviso gives a dispensatory power to the Secretary of Labor.

An alien who enters under a passport and visa fraudulently obtained is "not entitled * * * to enter" under the act of 1924. It is true that to be admitted as a quota immigrant Fink only had to have "an unexpired immigration visa," section 13(a)(1), of the Quota Act of 1924, 8 U.S.C.A. § 213(a)(1), and that he did have one; both passport and visa were in fact issued to him, that is, to the man who appeared before the officials, though under the name, Apfelroth. It is hardly true, therefore, to say that the documents were "no" passport and "no" visa; they were not for instance like passports issued to another person, whom the bearer pretends to be. Moreover, a fact suppressed or misstated is not material to the alien's entry, unless it is one which, if known, would have justified a refusal to issue the visa. United States ex rel. Iorio v. Day, 2 Cir., 34 F.2d 920; United States ex rel. Leibowitz v. Schlotfeldt, 7 Cir., 94 F.2d 263; McCandless v. United States ex rel. Murphy, 3 Cir., 47 F.2d 1072, appears to be to the contrary. In any case the fraud here was essential to success; Apfelroth could get a preference visa, Fink could not; and while it is true that the statute does not expressly exclude those who get their papers by fraud, fraud thwarts their very purpose. They are the means of identifying the bearer by name and otherwise, so that the propriety of his admission may be scrutinized, and he can be followed if admitted; if they describe him as someone else, he makes that scrutiny impossible. So it has always been held when the question has arisen. United States ex rel. Thomas v. Day, 2 Cir., 29 F.2d 485; Popa v. Zurbrick, 6 Cir., 45 F.2d 583; Heizaburo Hirose v. Berkshire, 9 Cir., 73 F.2d 86. The recital in the warrant was therefore correct; the alien had not entered without inspection;

he had been inspected, but had successfully baffled it. We do not read Ex parte Saadi, Saadi v. Carr, 9 Cir., 26 F.2d 458 as deciding the contrary; the alien had failed to enter at the proper place, but succeeded in boarding a train at the border by deceiving the local inspector. Not having entered where he should have applied and where he had once failed, he was held to have entered "without inspection". "Inspection" meant inspection at the places prescribed.

Order affirmed.