**Armando Ortiz CALVILLO, Plaintiff-Appellant,**

v.

**Robert H. ROBINSON, District Director of the Immigration and Naturalization Service, Defendant-Appellee.**

**No. 12643.**

United States Court of Appeals Seventh Circuit.

Nov. 3, 1959.

Joseph B. Gilbert, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Donald S. Manion, Asst. U. S. Atty., Chicago, Ill. (John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel), for appellee.

Before DUFFY, KNOCH, and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff entered the United States as an immigrant from Mexico, July 16, 1955, on a visa issued on plaintiff's application by the United States Consul in Mexico City. In his application, plaintiff had stated that he had resided in the United States two months during the pe-

riod from 1950 to 1951. He failed to disclose the fact that he had previously resided in the United States about six months in 1943 and most of the period between September, 1948, and November, 1953.

Plaintiff was ordered deported on the ground that he procured his visa by willful misrepresentation of a material fact and that he was, furthermore, excludable at the time of entry because he was not in possession of a valid visa, the visa in his possession having been obtained through willful misrepresentation of a material fact.

The Board of Immigration Appeals sustained both charges on which the Immigration and Naturalization Service had ordered plaintiff's deportation. Plaintiff appeals to this Court from order of the District Court dismissing his complaint in which he sought to vacate the deportation order as invalid.

It is conceded that the application for visa contained a willful misrepresentation of fact. Plaintiff contends that such misrepresented fact was not material because disclosure of the length of his prior residence in the United States would not have precluded grant of visa.

The applicable statute, Title 8, U.S.C.A. § 1182 reads:

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States: * * *

"(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact;

"(20) Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, * * * *"

In support of his contention, plaintiff cites United States ex rel. Iorio v. Day, 2 Cir., 1929, 34 F.2d 920; United States ex rel. Leibowitz v. Schlotfeldt, 7 Cir., 1938, 94 F.2d 263; In re Iwanenko, D.C. Ill.1956, 145 F.Supp. 838; and State Department Visa Office Bulletin (November 22, 1955) from which plaintiff quotes as follows:

"* * * a misstatement or concealment in an alien's application for a visa are not considered material if it appears that the applicant would have been equally entitled to what he obtained, or it appears that the applicant would not have been found ineligible to receive a visa, had he told the truth. The word 'materiality' has been interpreted as referring to a fact or facts which would have justified the consul in refusing a visa had they been disclosed."

The first of plaintiff's cited cases concerns one Leib Leibowitsch who had assumed the name and used the birth date of his older brother, Feive, apparently to avoid military service in Latvia. In 1923 he applied for a quota visa from the United States Consul in Riga, Latvia, giving the name Feive Leibovitsch and the birth date of his brother. In 1934, in connection with application for certificate of naturalization, the true facts were disclosed and he was sought to be deported on the ground that, as an alien, he had entered this country without an unexpired quota immigration visa.

Leibowitz (the spelling varies throughout this case) explained that he had applied under the name he had been using because stating his own name would have resulted in complications and delay. Judge Major, writing the opinion for this Court said (94 F.2d at page 264):

"The record discloses no reason why appellee would not have been entitled to a quota visa if his correct name and age had been stated; * * * and no question is raised affecting his right to enter this country as a quota immigrant other than the false statements made in connec-

tion with the obtaining of the visa * * * but it is claimed by the government that the misrepresentation made by appellee as to his name and age in obtaining the visa was of such a fraudulent nature as to vitiate the same, and that appellee is in a position no different than an immigrant who has entered without such a document."

In that opinion Judge Major analyzed cases cited by the District Director of Immigration and Naturalization and concluded that in those cases the false statements were the basis for the issuance of a visa which could not have been otherwise obtained, whereas in the case before the Court (as here) the visa could have been obtained if the truth had been stated. He quoted the Iorio case as most nearly in point.

Iorio's oath in his application for visa that he had never been imprisoned was the basis for a charge of procuring entry by false statements. There was evidence that he had been fined in New Mexico for selling and, again, for possessing whiskey, and had been imprisoned in Arizona for thirty days. The Court did not consider these offenses to be commonly accepted as involving moral turpitude, and the Court there said (34 F.2d at page 921):

"It is true that the relator was bound to tell the truth on his application, but, if what he suppressed was irrelevant to his admission, the mere suppression would not debar him."

Larysa Iwanenko was born in the Ukraine (Russia). She was admitted to the United States as a Polish citizen chargeable to the Polish nonpreference quota. Her naturalization was resisted on the ground that she made an incorrect statement concerning her birth at the time she was granted a visa. In reliance on the Iorio case and this Court's decision in the Leibowitz case, the District Court said (145 F.Supp. at pages 842–843);

"Misstatements in an application for an immigration visa, even if knowingly made, are not to be regarded as grounds for deportation, in absence of a showing that the misstatements were prejudicial to the Government in some other sense than that they hampered a complete and full investigation and that the concealed facts are disgraceful or embarrassing, and courts tend to treat such concealment as no ground for deportation, if it is clear that had the concealed fact been disclosed, the attitude of the American admitting authority would have been the same."

The District Director in the case before us takes the position that the misrepresentation was material because it impeded investigation, citing United States v. Parker, 7 Cir., 1957, 244 F.2d 943, which concerned perjury in testimony before a grand jury. We have also considered with care other cases cited by the District Director which did involve visa applications.

United States ex rel. Volpe v. Smith, 7 Cir., 1933, 62 F.2d 808, dealt with an alien who falsely stated that he was a naturalized citizen of the United States and that his naturalization certificate was in Chicago, whereupon the inspector at the port of entry examined him no further. Further examination might have disclosed the fact that the alien when previously in the United States had been arrested on numerous occasions and had been convicted of making and passing counterfeit stamps, a crime involving moral turpitude. Judge Evans writing the majority opinion said (at page 812):

"No other false or fraudulent representation could have accomplished its unlawful purpose so effectively as the one appellant adopted. To assert that he was a citizen of the United States and that his naturalization papers were in Chicago wholly disarmed the inspector and terminated

the inspection. * * * In legal effect, there was no inspection."

Volpe was held to have entered the United States without inspection and, therefore, unlawfully. Ortiz Calvillo in the case before us did not evade inspection at the port of entry.

In United States ex rel. Jankowski v. Shaughnessy, 2 Cir., 1951, 186 F.2d 580, at page 582, the Court said that the alien procured a visa " * * * 'by fraud and misrepresentation in that it appears that, in his application, [he] * * * concealed the fact that he had been arrested in England in 1940 and imprisoned there until December 1942, and falsely stated that he was at sea during the period he actually was in prison in England.' The misrepresentation and concealment were material. Had he disclosed those facts they would have been enough to justify the refusal of a visa."

In Landon v. Clarke, 1 Cir., 1956, 239 F.2d 631, the Court reviewed the Leibowitz and Iorio cases and United States ex rel. Fink v. Reimer, 2 Cir., 1938, 96 F.2d 217, certiorari denied, 305 U.S. 618, 59 S.Ct. 78, 83 L.Ed. 395, which reasserted the rule that a misrepresentation is not material to the alien's entry, unless it is one which, if known, would have justified a refusal to issue a visa. The opinion in the Landon case then states (239 F.2d at page 634):

"That she might have obtained a visa on the true facts does not vitiate the fraud." (citing the Jankowski and Volpe cases)

The Court then, expressing difficulty in applying the announced principle to the facts of the Reimer case, thought:

" * * * it can be reasonably concluded from that opinion that the court considered a misstatement concerning identity a material misrepresentation, and, further, that the court considered the Government's right to investigate an incoming alien upon entry as vital to the immigration process."

The Court in the Landon case is concerned that (at pages 635–636):

" * * * proof of whether an alien would have been excludable if he had told the truth, or if the proper investigation had been held, in order to decide the materiality of a misrepresentation, would force the courts into the realm of conjecture and speculation, in trying to make a decision only the proper authorities could have capably made."

However, in the case before it, the Court there found (at page 632):

"According to her own admissions, the appellee falsely represented herself as single and gave her maiden name, Elsa Smith Walcott, so that the Costa Rican Consul in Jamaica would issue her a Costa Rican passport, which he would not have issued had he known of her marriage to a British subject, since by such marriage she also became a British subject."

Frank Ernest Ablett (Ablett v. Brownell, 1957, 99 U.S.App.D.C. 387, 240 F.2d 625) represented in his application for visa that he had not been arrested, indicted or convicted of any offense, although he had been convicted in England of keeping a brothel and of petty theft. The Court in that case said (at page 631):

"Thus, we must conclude that the plaintiff's false statement that he had never been convicted of any offense was a material misrepresentation, with the result that the visa obtained thereby * * * was invalid."

Our attention is also invited to the recent *per curiam* opinion in Viruette Torres v. Hoy, 9 Cir., 1959, 269 F.2d 289. The Court there said that the evidence showed Maria de la Luz Viruette Torres had been convicted, under another name, for smuggling aliens, and, following a suspended sentence, she had been allowed to depart voluntarily. Subsequently she had sought entry into the

United States and had been excluded. Still later she acquired a visa on an application in which she falsely stated that she had not previously been deported, or permitted to leave the United States voluntarily under order of deportation, had not been arrested, indicted, or convicted of any offense, and had not previously been excluded from the United States. She also said that she had resided in Mexico during a period when she had actually been in the United States.

The Court then, after saying that neither Leibowitz nor another case following it were apposite, continues (269 F. 2d at page 291):

"Nor are we convinced that the above cases represent the law today, for the majority rule seems to be that the fact the alien might have obtained a visa on the true facts does not vitiate the fraud or misrepresentation." (citing Landon, Jankowski, and Ablett, supra)

However, the Court immediately adds:

"In any case, the facts misrepresented in the instant case are so obviously material as to admit of no reasonable contention to the contrary."

The same observation applies with equal justice to all the cases cited in support of what the Ninth Circuit calls the "majority rule."

■■ It is our considered conclusion that the cases cited by the District Director are all distinguished on facts from the holding of this Court in Leibowitz. We find no basis for departing from the principle enunciated in that decision: that to be material, a misstatement must refer to such facts as would have justified a consul in refusing a visa had they been disclosed.

The order dismissing plaintiff's complaint is reversed and the cause is remanded with directions to declare the deportation order invalid and to set it aside.

Reversed and remanded with directions.